IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TOMMY DEWAYNE HALL                                       PLAINTIFF

               v.                  Civil No. 05-4043

SHERIFF H.L. PHILLIPS; JEFF
BLACK; and TERRY PORTER                             DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Tommy Dewayne Hall brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. While he was incarcerated at the Miller County Jail, Hall contends his federal constitutional rights were violated in the following ways: (1) by the unsafe conditions at the Miller County Jail caused by a leaking water sprinkler; (2) by the denial of adequate medical care; (3) by defendants' interference with his legal mail; (4) by defendants' failure to protect him from attack by a fellow inmate; and (5) by his false arrest and false imprisonment on failure to appear charges in April of 2003 and June of 2003.

On February 14, 2006, defendants filed a motion for summary judgment (Doc. 22). On April 6, 2006, the undersigned entered an order (Doc. 28) directing the plaintiff to complete, sign and return an attached questionnaire that would serve as his response to the motion for summary judgment. On April 17, 2006, plaintiff's response to the court's questionnaire (Doc. 30) was filed. The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

AO72A
(Rev. 8/82)

## I. BACKGROUND

Hall was booked into the Miller County Jail (MCJ) on August 27, 2004. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. He remained incarcerated there until October 27, 2005. *Id.* at ¶ 2. He was incarcerated because of pending criminal charges and because of a probation revocation. *Id.* at ¶ 3.

On January 4, 2005, Hall slipped and fell on some water that had leaked from a faulty water sprinkler. *Resp.* at ¶ 4. Prior to his fall, Hall did not notice the water sprinkler was leaking. *Id.* at ¶ 5(A). Hall does not know if any other inmates or jail staff had fallen or slipped on the water. *Id.* at ¶ 5(B). He does not know how long the sprinkler had been leaking but states it was long enough for the paint to be knocked off the floor. *Id.* at ¶ 5(C).

Maintenance personnel do checks around the facility but Hall isn't sure if they noticed the sprinkler was leaking. *Resp.* at ¶ 5(C). However, after he fell, Hall knows it was reported and still wasn't fixed. *Id.*

The fall caused him to suffer constant pains up his spine, headaches, and blurry vision. *Resp.* at ¶ 6. Hall indicates he still has spinal pain from the back of his neck to the small of his back. *Id.* At times, the pain is so bad it gives him headaches and causes him to have blurry vision. *Id.* Hall asserts there are also times when it puts pressure on his left leg making it hard for him to walk. *Id.*

Following the fall, Hall indicates he was taken to Wadley Regional Medical Center. *Resp.* at ¶ 7. He indicates x-rays were taken to check if any bones were broken. *Id.* He was

AO72A
(Rev. 8/82)

prescribed Tylenol #3 which he states he never received. *Id.* Instead, Hall states he eventually received Ibuprofen after making repeated requests. *Id.* at ¶ 11(A).

In a March 9th grievance, Hall indicated he was supposed to see the doctor again. Although he cannot recall the exact date, Hall did eventually see Dr. Stringfellow. *Resp.* at ¶ 11(B). Dr. Stringfellow prescribed Tylenol #3, an x-ray, and Nurse Porter was to give him instructions on exercises. *Id.* Hall maintains he never received the Tylenol #3 or the instructions regarding exercise. *Id.* Hall maintains Nurse Porter failed to follow Dr. Stringfellow's instructions and did nothing for him. *Id.* at ¶ 12(A).

Currently, Hall indicates he is being treated at the infirmary at the Arkansas Department of Correction and awaiting doctor call. *Resp.* at ¶ 6. He indicates he still has pain up his spine which gives him headaches and blurry vision. *Id.* at ¶ 12(D).

While at the MCJ, Hall was able to send and receive both legal and personal mail. *Resp.* at ¶¶ 13 & 14. Although he had some "lawyer problems" at first, Hall retained an attorney to represent him on his criminal charges. *Id.* at ¶ 15.

Hall was asked to provide details about his claim that his legal mail was returned to him or was being held and had been opened. *Resp.* at ¶ 17. Hall could not recall the details, such as how often it happened, who the legal mail was from, whether more than one piece of mail was involved, or who opened the legal mail. *Id.* However, he stated the mail was already opened when he received it. *Id.* He noted he complained on different occasions but the only response he ever received was that a memo would be put up about it. *Id.* Despite this, Hall stated it continued to happen. *Id.*

-3-

On February 5, 2005, Hall was attacked by a fellow inmate, Robert Green. *Resp.* at ¶ 18(A). According to Hall, the attack occurred the day after Jeff Black ordered all inmates who were not on medication, which should have included Green, removed from the medical pod. *Id.* at ¶ 18(A) & ¶ 20. If Green had been moved, Hall maintains the attack would not have occurred. *Id.* at ¶ 20.

Prior to the attack, Green had not threatened Hall in anyway. *Resp.* at ¶ 18(A). The attack occurred in the medical pod. *Id.* Inmates Greg Thomas, Mike Burrows, and Staci Smith were present as were other inmates. *Id.* Sgt. Royce Green came and moved Green following the attack. *Id.* at ¶ 18(A) & ¶ 18(E).

When asked to describe any injures he received as a result of the assault, Hall responded he just had spinal pain. *Resp.* at ¶ 18(D). He stated the pain up his spine hadn't been looked into. *Id.*

Hall also alleges he was falsely arrested twice and falsely imprisoned on a failure to appear charge. A warrant had been issued for his arrest on this charge. *Resp.* at ¶ 19(A). Hall maintains the city warrant was served the first time while he was in court. *Id.* Hall maintains the day the warrant was served was the day he allegedly failed to appear. *Id.* Hall indicates the failure to appear charge was dismissed. *Id.* at ¶ 19(B).

Hall did not personally speak to, or communicate with, Sheriff Phillips regarding conditions at the jail, the attack by Green, or his requests for medical treatment. *Resp.* at ¶ 8 & ¶ 18(B). With respect to Jeff Black, Hall states he talked to Black the day after he returned from

AO72A
(Rev. 8/82)

the hospital. *Id.* at ¶ 9. Hall also states that he wrote grievances and had his family call Black. *Id.* at ¶ 9 & ¶ 18(C).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendants have now moved for summary judgment. First, defendants argue they are sued in their official capacities only. As there is no evidence of any custom or policy of Miller County that was a moving force behind any alleged violation of plaintiff's constitutional rights,

AO72A
(Rev. 8/82)

they contend there is no basis on which they can be held liable under § 1983. Second, defendants argue that the facts set forth in the light most favorable to the plaintiff fail to establish that they violated the plaintiff's constitutional rights. Finally, defendants argue there is no basis on which Sheriff Phillips can be held liable for any alleged constitutional violations.

### *Official Capacity v. Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only

> type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

At the same time, we are charged with liberally construing pro se complaints. *See e.g. Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)(requirement that pro se complaints be construed even more liberally than counseled pleadings); *White v. Wyrick*, 530 F.2d 818, 819 (8th

-7-

Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In responding to the summary judgment motion, Hall has noted that he intended to sue Porter and Black in both their individual and official capacities. *Resp.* at ¶ 23. As plaintiff is proceeding pro se and is incarcerated, we will construe this as a motion to amend his complaint to assert both individual and official capacity claims against Porter and Black. *See e.g., Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997)(complaint against state officials who were sued in their official capacities was deemed amended to assert personal capacity claims, where plaintiff moved to amend complaint in response to motion for summary judgment).

### *Slip and Fall*

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). *See also Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)(The objective component is "contextual and responsive to contemporary standards of decency.")(quotation

AO72A
(Rev. 8/82)

omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. (citations omitted). *See also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

Here, there are no genuine issues of fact as to whether defendants acted with deliberate indifference towards Hall's safety. Prior to Hall's fall on January 4, 2005, he had not complained about the leaking water sprinkler. Hall is not aware of any other inmate having complained about the leak or having fallen as a result of the condition. There is simply nothing to suggest the defendants failed to act in the face of a risk of harm to the health or safety of the detainees at the MCJ. *See e.g., LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishments")(citation omitted).

"[E]very injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996). While we do not hold that slippery floors and/or faulty and leaking water sprinklers can never establish a claim of constitutional dimension, we believe that under the circumstances of this case no claim of constitutional dimension is stated. *See e.g., Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)(inmate was on crutches and fell and injured himself several times--his repeated injuries and unsafe conditions state a claim where slippery floors without protective measures create sufficient danger). There is simply nothing to support a finding that defendants were aware of the condition of the sprinkler, or that they failed to maintain a safe area for the detainees, or that they were aware there was a substantial risk detainees would fall because of the leaking sprinkler and that a fall would cause serious harm. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 110 (8th

-9-

AO72A
(Rev. 8/82)

Cir. 1998)(Plaintiff must prove the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference).

### *Denial of Medical Care*

In Hall's case, he was incarcerated both because of pending criminal charges and because his probation had been revoked. *Resp.* at ¶ 3. The Eighth Amendment therefore applies to his denial of medical care claim.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Hall contends he was denied adequate medical care following his slip and fall and the attack on him by a fellow inmate. Although he was taken to the hospital after the slip and fall, Hall contends he was not provided the prescription medication ordered by hospital

AO72A
(Rev. 8/82)

medical personnel and not provided with necessary follow-up care. *See e.g., Resp.* at ¶ 7 & ¶ 11(B).

We will assume for purposes of this summary judgment motion that Hall's neck and back pain and stiffness constituted a serious medical need. Hall indicates his neck and back pain has continued and he is currently seeking medical treatment for the same. Hall submitted various requests/grievances complaining of back and neck pain and stiffness and asking about the prescribed pain medication. The court has been provided with no information on how these requests were evaluated. We believe there are genuine issues of material fact as to whether Nurse Porter and Jeff Black were deliberately indifferent to Hall's serious medical needs.

### *Interference with Mail*

"Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "A prison policy that obstructs privileged inmate

-12-

AO72A
(Rev. 8/82)

mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are (1)] reasonably related to legitimate penological interests,"such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. *Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 1881-82, 104 L. Ed. 2d 459 (1989).

Here, Hall was allowed to send and receive personal and legal mail while he was at the MCJ. He appears to complain of only one incident when he states legal mail was opened outside his presence before it was delivered to him. Although he mentioned that this continued to occur even though he complained, Hall failed to provide details regarding any of these other incidents. Hall was confined at the MCJ from August 24, 2004, until October 27, 2005, *resp.* at ¶ 2, he points to only isolated incidents of alleged interference with his mail. He does not challenge any ongoing censorship. Nor does he challenge a ban on the type of mail a prisoner can receive or send. He does not contend he was denied paper, writing instruments, or postage.

He has not suggested there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference-- an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); *Zimmerman v. Tribble*,

-13-

226 F. 3d 568, 572 (7th Cir. 2000)(allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment); *Rowe v. Shake*, 196 F.3d 778, 782-783 (7th Cir. 1999)(relatively short-term and sporadic delays in receiving mail not the result of content-based prison regulation or practice is insufficient to state a First Amendment claim). Furthermore, there is no indication the named defendants were responsible for the alleged interference. Defendants are therefore entitled to summary judgment on this claim.

### *Failure to Protect*

The Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley*, 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

AO72A
(Rev. 8/82)

Thus, to prevail, Hall must show: (1) that his incarceration with Green posed a substantial risk of serious harm, and (2) each of the defendants knew of and disregarded an excessive risk to Hall's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

To establish the second component, Hall must show that each defendant acted, or failed to act, with deliberate indifference to Hall's safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Further, the United States Court of Appeals for the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat." *Id.* at 1130. Further, the district court found that "the defendants periodic cell checks yielded no information that would have put them on such notice." *Id.* The Eighth Circuit found no clear error. *Id.* It noted that "[a]lthough the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, or had reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion." *Id.*

In this case, we believe defendants are entitled to summary judgment on this claim. Prior to Green's attack on Hall, Green had not threatened Hall in anyway. *Resp.* at ¶ 18(A). Nothing before the court suggests Green has a previous history of violent attacks on inmates or that there was any reason to suspect an attack was going to occur. Instead, Hall's claim is premised on his belief that Green should have been moved out of the medical pod the day before because he was not on medication. Had this been done, Hall maintains the attack would not have occurred because he and Green would not have been housed together. *Resp.* at ¶ 18(C). This is simply insufficient to establish there are genuine issues of material fact as to whether Hall was incarcerated under conditions posing a substantial risk of serious harm and as to whether defendants recklessly disregarded the risk.

### *False Arrest/False Imprisonment*

Hall's false arrest and false imprisonment claims fail because he was arrested and held pursuant to facially valid arrest warrants. *See Resp.* at ¶ 19(A). The Fourth Amendment guarantees individuals "the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A facially valid arrest warrant insulates officers from a claim of false arrest. *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000). *See also Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988)("[A]n arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer.").

In this case, Hall has not alleged that any of the named defendants were responsible for securing the warrant. *Mendenhall*, 213 F.3d at 231-32 ("While a valid arrest warrant would

-16-

normally insulate officers against a claim for false arrest, in a case such as the one before us where the officers charged with false arrest were responsible for securing the warrant, we are required to test the validity of that warrant, applying the ususal standards."). Instead, Hall only alleges Black executed the warrant by arresting Hall while he was in court. *Resp.* at ¶ 19(A). *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)(Public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid arrest warrant). "The warrant itself . . . shields [defendants] from liability for executing it, unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization." *Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994).

In this case, Hall has alleged no facts that would have suggested to defendants that the warrant was invalid. Defendants are therefore entitled to summary judgment on Hall's false arrest claim.

Similarly, having acted pursuant to a facially valid warrant, defendants cannot be held liable for Hall's imprisonment in the MCJ. *Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir. 1993)(noting courts have consistently held that officials–including sheriffs–acting pursuant to facially valid court orders have absolute quasi-judicial immunity from damages for actions taken pursuant to that order). Defendants are therefore also entitled to summary judgment on the false imprisonment claim.

AO72A
(Rev. 8/82)

### *Sheriff H.L. Phillips*

Finally, defendants contend there is simply no basis on which Sheriff H.L. Phillips can be held liable. We agree. We find there is no genuine issue of material fact as to whether Sheriff Phillips can be held liable for any alleged constitutional violation.

A supervisor may not be held liable for a section 1983 violation on the basis of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Hall did not personally speak to, or communicate with, Sheriff Phillips regarding the conditions at the jail, his requests for medical treatment, or the attack on him by Green. *Resp.* at ¶ 8, ¶ 18(B). Hall does not contend Sheriff Phillips directly participated in the alleged false arrest, false imprisonment, or any of the other alleged constitutional violations. Hall does not maintain that a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996) (*citing Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994)); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). Further, the record in this case is devoid of any suggestion of the existence of a custom or policy on which to hold Miller County liable. In short, there is nothing to suggest Hall's alleged constitutional deprivation was caused by a custom or policy of Miller County.

AO72A
(Rev. 8/82)

## IV. CONCLUSION

I therefore recommend that the defendants' motion for summary judgment be granted in part and denied in part. Specifically, I recommend: the motion be granted as to the unsafe conditions claims, the interference with legal mail claims, the failure to protect claims, the false arrest and false imprisonment claims, and all claims against Sheriff H.L. Phillips. I recommend that the motion be denied as to plaintiff's claim that he was not provided with adequate medical care. Finally, I recommend that plaintiff's complaint be considered to be amended to be asserting both individual and official capacity claims against Terry Porter and Jeff Black.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of June 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)