IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TOMMY DEWAYNE HALL                                                     PLAINTIFF

              v.                       Civil No. 05-4043

JEFF BLACK; and
TERRY PORTER                                                        DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Tommy Dwayne Hall, a former inmate of the Miller County Jail, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Hall originally asserted a variety of claims. However, defendants were granted summary judgment on all claims except Hall's claim that defendants failed to provide him with adequate medical care.

On September 7, 2006, an evidentiary hearing was held. At the conclusion of the hearing, the case was taken under advisement pending preparation of this report and recommendation.

**I. EVIDENCE PRESENTED**

At the evidentiary hearing, the court heard the testimony of a number of witnesses. For purposes of discussion, the court will summarize in the first person the testimony given.

*Tommy Dewayne Hall*

I am an Arkansas Department of Correction (ADC) inmate. I'm at the Eastern Arkansas Regional Unit in Brickeys, Arkansas. I'm serving a sentence of thirty-five years for possession of controlled substances with the intent to deliver.

-1-

I was incarcerated at the Miller County Jail while I was awaiting trial on criminal charges. I was convicted in August of 2005.

I slipped and fell in the dayroom on January 4, 2005. I fell over a table. I had pain in my spine and couldn't move. I was taken to the hospital. *See Plaintiff's Exhibit* 2. At the hospital, x-rays were done of my back and the doctor told me nothing was broken. I was given a prescription for Tylenol #3. I never received this medication. I didn't start receiving any medication, not even Tylenol or Ibuprofen, immediately after my injury.

When I got back to the jail, I was put in the suicide cell for observation. I knew I would not get medical attention. I was brought back from the hospital in a wheelchair. I was dropped out of the wheelchair and dragged to the cell.

I wrote a grievance to Black. I didn't get anything back. I wrote another grievance and told him I was in pain. I wasn't getting any medical attention.

Black called me out of the cell. He said he was not taking me out of the suicide cell. He mentioned that my grievance said I was going to sue him. He said I should go ahead and sue him. He stated that his wife was a lawyer. I didn't receive any medical attention.

I was constantly writing sick call slips and grievances. *See Plaintiff's Exhibits* 1 & 4 (grievances dated 1/7/2005, 1/15/2005, 1/21/2005, 2/1/2005, 3/9/2005, 4/8/05). I got Advil once on the night shift.

I was informed I would see the doctor. I saw the doctor over a month later. I was seen by Dr. Stringfellow on February 1, 2005. I told Dr. Stringfellow that I never got the Tylenol #3. He said he would prescribe some. Dr. Stringfellow told Nurse Porter to get me an x-ray, put me

back on Tylenol #3, give me some exercises to do, and put me on a follow-up. Porter didn't do any of it. She was not taking my medical condition seriously so I filed a complaint with the court.

Nurse Porter's notes from February 29, 2005, indicate she gave me eighteen Tylenol to take at bedtime. *Defendants' Exhibit* A. This didn't happen. You don't receive packs of Tylenol at Miller County.

Nurse Porter's notes also indicate there was a shakedown on March 9, 2005. *Defendants' Exhibit* A. The notes indicate a bag containing both Tylenol and Ibuprofen were taken from me.

I'm not sure if there was a shakedown on March 9th. They did do shakedowns. During one shakedown, they confiscated a bag of sinus pills from me. The pills were yellow.

When they gave me Tylenol or Ibuprofen, I took it. I never talked to Black about why I didn't take my medication. I only talked to him about not getting medical attention.

I escaped from Miller County Jail. I jumped over the fence.

I mainly still have spinal pain and back spasms. I have papers concerning the back pain. My paperwork says that my lower spine is not straight. A chiropractor at a back pain clinic gave me the paperwork in 2001. This was before my injury at Miller County.

In the ADC, I'm in the process of getting a medical examination. I haven't had any real medical treatment since my fall except at the ADC.

I should have been provided with pain medication while I was at the Miller County Jail. Dr. Stringfellow also asked for x-rays and that I be given back exercises. It was never done. My situation was not taken seriously.

*Regina Sanders*

I have known Hall for four or five years. I'm his girl.

Hall called me a lot of times complaining about backaches, headaches, and other medical problems. Hall complained a lot through the months about neglect of medical attention.

Hall told me he slipped and fell. He was taken to the hospital the first day. Hall asked me to call Black. In a two day period, I received many calls from Hall complaining about headaches and backaches caused by the slip and fall.

I believe I called Black about five or six times over a two day period. I called Black at the Miller County Sheriff's Office. I think he was the head man over the jailers. I spoke with Black maybe two or three times. He told me he was aware of Hall's slip and fall and would see about it.

I called Hall's sister, Geneva Hall, to see if she could get anything done. I have no personal knowledge about what happened with Hall's medical treatment. I did go to the jail and visit him. Hall said how bad he was hurting.

*Michael Burrow*

I'm twenty-seven years old. I'm an inmate in the ADC–Wrightsville Unit. I'm serving a ten year sentence for convictions relating to drugs, guns, and perjury.

I know Hall. We were in the same cell. I was in the jail from December of 2005 until February of 2005 and then again in May of 2005 until July of 2005.

AO72A
(Rev. 8/82)

I remember the day of the slip and fall. I was in the cell when Hall fell. He was walking around and he slipped where a sprinkler had been leaking. Hall's head hit the wall. He bounced off the wall and then hit the floor.

We got a guard in there. An ambulance came and Hall was taken out on a stretcher. All I know is Hall hurt his neck. I don't know what injury Hall had to his neck.

I don't know how long Hall was at the hospital. I don't know if Hall was put directly in the cell with us when he came back from the hospital. I don't know if he got his medication or not. I don't recall seeing Hall take any medication for his neck. Hall complained about not getting the correct medication.

I recall Hall saying he was not getting to go to sick call regarding the slip and fall. Hall and some other guys were complaining they were not getting their medication. I think one of the inmates who complained was Carl Story and another inmate was named Dennis. I was asked to sign as a witness that medical attention at the jail was slow if you got any medical attention.

Except for when the slip and fall first occurred, I didn't see anything get done for Hall while I was there. I'm not 100% sure of any medical treatment he requested and didn't receive. I didn't have any experience myself with the medical care at the jail.

Following the fall, Hall had some physical limitations. His neck was messed up. I think he was wearing a brace. Hall was real stiff and moving slow. When he looked at you, he would turn his whole body. It seemed like he was hurting.

*Michael Walker*

I'm an ADC inmate. I am in the Varner Unit. I'm serving a ten year sentence.

I know the plaintiff. I know him from the streets. I was also in the same cell with him at the Miller County Jail. I don't recall the dates.

I don't know about the slip and fall incident. I remember Hall having a conversation about medical problems with Black. I don't know too much about it. I heard Hall saying no medical was being given to him in the suicide prevention cell. It was so long ago I don't remember what specifically was said.

I remember Hall complaining about not receiving medical attention. I do recall seeing Hall take Aspirin or Tylenol. I saw two people have seizures and it took quite a while for them to get medical attention. They probably do have slow medical care at the Miller County Jail.

### Stacy Smith

I'm an ADC inmate. I'm at Brickeys. I'm serving a nine year sentence for commercial burglary.

I know Hall. I was in the same cell with Hall. I was put in that cell when I first got locked up in September I believe.

I recall the day Hall fell. I was in the cell at the time but I was asleep. Hall was taken to the hospital.

I recall signing a grievance for Hall that complained about him not getting medical attention. I signed the grievance because Hall asked me to sign it.

The nurse didn't come around when Hall asked her to come. I was there when he asked her to come. I saw Hall complaining about not receiving medical attention after his slip and fall.

AO72A
(Rev. 8/82)

I was shot in the head in 1996. I was given prescribed medication at the hospital. Eight months later I went to jail.

When I was at the Miller County Jail, I started getting headaches. I put in a sick call. The nurse came around and said I couldn't get what my doctor ordered. She said I could only get Ibuprofen. I never submitted a grievance about medical treatment.

The injury to my head affected my memory—some things I know and some things I don't. I'm trying to regain my memory.

### *Jeff Black*

I'm currently a security director at the Texarkana, Arkansas, School District. I was employed as jail administrator of the Miller County Correctional Facility between August of 2002 and August 26, 2005. I oversaw the jail and answered to the Sheriff. Before that, I worked at the Sheriff's office as a warrants officer and/or narcotics officer from 1997 until August of 2002. Before that I was ground operations manager for Emergency Medical Services.

I remember Hall. I talked to him once or twice concerning his fall.

I was notified he fell in West D and an ambulance had been called. I was told Hall possibly had a head or neck injury. I'm not sure if I was in the building when Hall fell.

I read the emergency room doctor's notes. From the notes, it didn't appear that Hall had a serious injury. *Plaintiffs' Exhibit* 2 at page 4 (x-rays of C-spine, T-spine, and L-spine were normal. "I think he just has musculoskeletal pain. . . . [H]e is able to get up, ambulate without any problems. I don't think the patient has any neurologic significant problems at this time.").

AO72A
(Rev. 8/82)

Hall came back to the jail later that day. I had no personal involvement in the medical care decisions made.

Hall filed some grievances. I was not given a copy of all of his grievances.

Grievances go to the grievance officer. Grievances concerning medical issues are routed to the nurse or the doctor.

If a grievance is addressed to me, I would get it. However, if the grievance officer could respond to the grievance, she would even if it was addressed to me.

Hall complained about not getting medical attention. I talked to Hall. I turned it over to the nurse. By the records and after taking to the nurse, I knew Hall had been to the hospital and had been seen by the nurse. I left it up to the doctor if Hall was receiving the correct medical attention.

Following the shakedown, I talked to Hall. I know the nurse was notified about the shakedown. She notified Dr. Stringfellow.

I know Hall was taken to the hospital after he fell. He was given a prescription for Tylenol #3. This is a narcotic medication. We don't give narcotics at the jail unless the doctor can't write another prescription that will relieve pain.

On a daily basis, there are probably fifty to one hundred requests for medical care out of two hundred inmates. The nurse has to triage and treat the more serious ones first. The nurse does sick call everyday.

AO72A
(Rev. 8/82)

I had Hall moved from the cell after the shakedown. He was complaining he was hurt and not getting medicine. I had him moved to the suicide pod. This is glassed in area where the guards could watch him closer and make sure he got his medication.

Hall spoke with me. He told me he was having back pain. Prior to being moved to the suicide pod, Hall was in an open dorm type area. The area, West D, holds forty to forty-five people. West D is where we kept everyone who was receiving medication.

A shakedown was done. When medicine, which appeared to be Ibuprofen or Tylenol, was found on Hall, it was brought to me. Neff found the medication on Hall. I had the officers take pictures. No confiscation form was completed. Officer Neff did fill out an incident report regarding the shakedown. Neff normally worked evening shift but sometimes worked during the day time.

The nurse is not allowed to give out more than eighteen Tylenol at a time. If an inmate has prescription medication, the medication is passed out and the inmate and deputy sign a medication sheet indicating the inmate received the medication. We hand out eighteen count bags of non-prescription strength Ibuprofen and Tylenol. Normally the inmate goes to the infirmary and talks to the nurse and pays $3 for the bag containing eighteen Ibuprofen or Tylenol. Ibuprofen or Tylenol can also be purchased from the commissary.

Sinus pills are yellow and smaller. It was obvious Hall was complaining about not getting his medication and it was obvious he was not taking his medication. We considered filing charges on Hall for having prescription medication on him.

AO72A
(Rev. 8/82)

I talked to Hall. I wanted to know why he hadn't been taking the medication. Hall said he wasn't taking the Tylenol because he was taking Ibuprofen.

I don't know Regina Sanders. I don't recall talking to Sanders. I don't recall saying that if Hall would pay his medical bills he would receive his medication.

Hall wrote me a letter and said he knew plenty of crooked lawyers. I did make a statement that Hall needed to sue me. I didn't notice that Hall had any obvious injuries when I spoke with him.

### Terry Porter

I am employed by the Miller County Sheriff's Office. I am a licensed vocational nurse (LVN). I have one year of licensed practical nurse's training and one year of academic classes. Prior to becoming employed at the Miller County Sheriff's Office, I worked for Correctional Medical Center.

My week starts on Monday. I fix the prescription medication for all inmates. I then see any inmates who have had emergencies over the weekend. If an inmate needs medical attention, the inmate fills out a sick call slip. I pick them up. I have to triage and see inmates with more serious problems first. I don't see many other inmates on sick call on Mondays because doing the medication takes a large amount of time.

Inmates are allowed to get certain over the counter medications. Inmates are allowed to get a three day supply of various medications including Tylenol, Ibuprofen, Monistat cream, and hydrocortisone cream. The inmates are charged $3. Prescription medications are dispensed by the jailers and the inmate must sign a medication log for each dose dispensed. The log just

AO72A
(Rev. 8/82)

indicates the date and time the medication is dispensed and contains the initials of the inmate and the jailer. The log does not indicate what medication the inmate received.

I recall Hall. I remember Hall seeking medical attention.

I was called when Hall fell. When I got to the pod, Hall was laying on the floor. He said there was tingling down his left side. I told the officers that an ambulance needed to be called. Hall needed to be transported by ambulance to make sure he had no back or neck injury.

When the ambulance arrived at the jail, Hall was put on a board, his neck was braced, and he was taken to the hospital. He was seen by a doctor there and an magnetic resonance imaging (MRI) was done. The test showed everything was within normal limits.

Hall had no injuries other than bruising to the back area. Hall had no problems with range of motion. He was given a prescription for Tylenol #3, twenty tablets, to be taken two every three hours.

Hall did not receive this medication. We do not give narcotics at the jail. If an inmate is prescribed a narcotic medication, I call Dr. Stringfellow and advise him of the situation. Dr. Stringfellow will order a different non-narcotic pain reliever.

I called Dr. Stringfellow about Hall on January 4, 2005, and Dr. Stringfellow discontinued the Tylenol #3 that had been ordered by the emergency room doctor. *Defendants' Exhibit* A. Dr. Stringfellow told me to put Hall on extra strength Tylenol, 500 mg. *Id.*

When Hall came back from the hospital, he was put in the suicide cell. I suggested that he be placed in the suicide pod. If there is someone who is hurt, this is a good place for them to

be. There is a guard in the booth all the time. This is the only time Hall was put in the suicide cell.

I put ice packs in the fridge for Hall's use. I bagged up eighteen count Tylenol with his name on it. I dispensed it every three days. He could use the Tylenol as needed (PRN). He was put in the suicide cell because the officers up there can observe him.

Hall was seen by Dr. Stringfellow on February 1, 2005. *Defendants' Exhibit* A at page 1; *Plaintiff's Exhibit* 3. Dr. Stringfellow ordered Motrin 600 mg., three times a day, for ten days. *Id.* Dr. Stringfellow also ordered exercises to strengthen Hall's back and increase his range of motion. *Id.* Dr. Stringfellow did not order additional x-rays. *Id.* Hall was given a copy of a list of exercises he could do to strengthen his back muscles. This was the only time Hall saw Dr. Stringfellow.

I saw Hall for a follow-up. He was taking 600 mg. of Ibuprofen but having headaches at night. This dosage of Ibuprofen, 600 mg., is regarded as a prescription strength dose. I gave him an eighteen count bag of Tylenol to take at night. Hall didn't take any of the eighteen count Tylenol.

During the shakedown, I was not in the pod. The shakedown occurred in the morning. I made notes about this incident in Hall's chart which contain the date and time. *See Defendants' Exhibit* A at page 3. The time listed is 9:00 a.m. I don't know why Officer Neff's incident report contains a time of 2240. Maybe Neff's report involved some different drugs. I didn't get a copy of Neff's report.

AO72A
(Rev. 8/82)

After the shakedown, I was called to Black's office. Hall was in Black's office. I asked Hall why he wasn't taking the Ibuprofen. Hall stated he hadn't been taking the Ibuprofen because he had been taking the Tylenol. But when I counted the pills, there were eighteen Tylenol and twenty-four Ibuprofen. The Ibuprofen was 600 mg. This was a prescription strength dosage and it was dispensed three times a day and Hall had to sign for it.

Grievances go to Renee Wright. If she can answer it, she does. If the grievance involves medical issues, Wright makes a copy of the grievance and sends it to me. If I have further comments, I write on the grievances, Renee makes a copy, and she sends it back to the inmate.

On February 1, 2005,[1] Hall submitted a grievance. *Plaintiff's Exhibit* 4 at page 2. Wright wrote "moved to West D" on the grievance. *Id.* I wrote Hall was seen by the doctor and prescribed 600 mg. of Ibuprofen, three times a day, for ten days. *Id.*

On February 28, 2005, Hall called me about his back pain. *Defendants' Exhibit* A at page 2. I ordered the Ibuprofen to continue, gave him Tylenol to take at bedtime, and put him on the list to see the doctor at his next visit.

I got two grievances from Hall. In the one Hall said he was getting medication from other inmates. I recognized some of the names of the inmates Hall mentioned and they were not getting any medication. The only other grievance I got from Hall was when he wanted to go to the health department. Hall submitted no other sick call slips or grievances about his back.

---

[1] The grievance form is actually dated 1-1-04 by Hall. *Plaintiff's Exhibit* 4 at page 2. The court assumes the year was actually 2005. We note that the response is dated February 1, 2005. *Id.*

AO72A
(Rev. 8/82)

## II. DISCUSSION

As Hall was a pretrial detainee, his denial of medical care claims are more properly analyzed under the Due Process Clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has employed the Eighth Amendment's deliberate indifference standard. *See e.g., Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006); *Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to

AO72A
(Rev. 8/82)

> medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Hall's denial of medical care claim is based on the following: (1) the fact that he never received the pain medication, Tylenol #3, prescribed by the emergency room doctor; (2) the fact that there were periods of time when he received no pain medication; (3) Nurse Porter's failure to provide follow-up x-rays and exercises as ordered by Dr. Stringfellow; and (4) defendants' failure to take his medical condition seriously enough.

Following his fall, Hall was taken by ambulance to the emergency room for treatment. X-rays were taken and it was determined that his pain was musculoskeletal in nature. Hall was given a prescription for Tylenol #3. It is undisputed that Hall never received any Tylenol #3. Instead, when Hall returned to the jail, Nurse Porter consulted Dr. Stringfellow who ordered extra strength Tylenol be provided Hall as a pain reliever instead of the narcotic pain reliever prescribed by the emergency room doctor.

The decision was made by Dr. Stringfellow in the exercise of his medical judgment. Dr. Stringfellow is not a defendant in this case. Even if Dr. Stringfellow was a defendant in this case, the mere fact that Hall disagrees with Dr. Stringfellow's decision to prescribe a different type of pain relieving medication than that ordered by the emergency room doctor does not state an actionable Constitutional violation. *See Estelle*, 429 U.S. at 105-06; *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(Constitutional violation cannot rest on mere disagreement with

treatment decisions.). No evidence was presented suggesting that the treatment of Hall's back pain with a non-prescription medication was inappropriate. *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002)("Neither differences of opinion nor medical malpractice state an actionable Constitutional violation.").

The evidence presented fails to show when Hall was first provided pain medication following his return to the jail from the emergency room and on what schedule he received the medication. Nurse Porter testified she prepared a bag containing eighteen extra strength Tylenol and provided it to Hall to be used on an as needed basis. Nurse Porter indicated this should have been a three days supply. Hall, however, denied he was ever provided with a bag containing Tylenol.

It is clear Hall did receive some medication. In grievances dated January 7, 2005, and February 1, 2005, Hall states "[t]he Tylenol is not working." *Plaintiff's Exhibit* 4. On the other hand, Hall complained in grievances dated January 15th and January 21st about not receiving any pain medication. *Plaintiff's Exhibit* 1 at pages 1 & 3. Hall testified he didn't get Tylenol or Ibuprofen when he first returned to the jail after having been to the emergency room.

With respect to Hall's contention that Dr. Stringfellow ordered additional x-rays to be taken, Dr. Stringfellow's notes contain no indication that he ordered x-rays. Nurse Porter also testified that Dr. Stringfellow did not order x-rays. With respect to Hall's contention that Dr. Stringfellow left orders that Hall should be given exercises to do, Nurse Porter testified that Hall was provided with a sheet of exercises he could do to strengthen his back.

Upon careful consideration of the evidence presented at the hearing, we conclude the evidence establishes at most that Nurse Porter was negligent in failing to insure that Hall received

-17-

the medication prescribed by Dr. Stringfellow. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)(Medical malpractice insufficient to state an actionable Constitutional violation). Certainly Nurse Porter produced no records to establish when, or how often, during January she provided Hall with the eighteen count bags of Tylenol or any records showing she provided Hall with the sheet containing information on strengthening exercises. The court is troubled by the failure of Nurse Porter to keep more accurate records. However, this laxness in record keeping does not necessarily translate into deliberate indifference. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)("A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions."). It is clear in this case that Hall received some pain relieving medication because he complained in grievances that the medication was not working. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993)(displeasure with medical judgment or disagreement with course of treatment is not actionable). Hall presented no verifying medical evidence to show that the delay in his being providing pain relieving medication had a detrimental impact on his health. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).

With respect to Black, he cannot be held liable for any alleged wrongful treatment of Hall on the basis of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 652 (1978). Nothing presented to the court establishes that Black was personally involved in deciding what medical care Hall should receive. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(official not involved in treatment decisions made by medical staff cannot be liable for medical staff's diagnostic decisions). Instead, Black referred the complaints and/or grievances that were made to him regarding Hall's medical care to Nurse Porter.

## IV. CONCLUSION

I therefore recommend that judgment be entered in favor of the defendants' and this action be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of September 2006.

        /s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)